UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE GONZALES, MANETTE DUBUISSON, and ALICE LACKS, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| - against - | |
| NATIONAL UNION FIRE INSURANCE OF PITTSBURGH, P.A., AMERICAN INTERNATIONAL GROUP, INC., CATAMARAN HEALTH SOLUTIONS, LLC, F/K/A CATALYST HEALTH SOLUTIONS, INC., F/K/A HEALTHEXTRAS, INC., ALLIANT SERVICES HOUSTON, INC., F/K/A JLT SERVICES CORPORATION, STONEBRIDGE LIFE INSURANCE COMPANY, F/K/A J.C. PENNEY LIFEINSURANCE COMPANY, TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, A MEMBER OF THE CHUBB GROUP OF INSURANCE COMPANIES, and VIRGINIA SURETY COMPANY, INC., | |
| Defendants. | |

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** _9/19/16_

**MEMORANDUM**
**OPINION & ORDER**

15 Civ. 2259 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This is a putative class action brought by Plaintiffs who purchased accident

disability and medical expense insurance coverage provided by Defendants National Union Fire

Insurance Company ("National Union"), American International Group, Inc. ("AIG"),

Catamaran Health Solutions, LLC, Stonebridge Life Insurance Company, Transamerica

Financial Life Insurance Company, Federal Insurance Company, Alliant Services, and Virginia

Surety Company, Inc. through the "HealthExtras Program." The Complaint pleads (1) quasi-

contract claims; (2) violations of N.Y. Gen. Bus. Law §§ 349-350; and (3) fraud. (Cmplt. (Dkt. No. 1) ¶ 4) Plaintiffs seek the recovery of all premiums and fees they paid to Defendants in connection with the insurance coverage they purchased. (Id.)

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. Nos. 95, 100, and 102)

## BACKGROUND[1]

I.     **FACTS**

   A.     **The HealthExtras Program**

In 1997, HealthExtras, Inc. (now known and sued as "Catamaran Health Solutions, Inc.") created an insurance program (the "HealthExtras Program") that offered accidental disability and medical expense insurance coverage. (Cmplt. (Dkt. No. 1) ¶ 33) The HealthExtras Program offered "(1) $1,000,000 or $1,500,000 accidental permanent and total disability insurance coverage; and (2) $2,500 emergency accident and sickness medical expense insurance coverage." (Id.)

HealthExtras, Inc. ("HealthExtras") entered into marketing agreements with banks that issue credit cards, including Citibank, Capital One, and Chase, and with companies that offer branded credit cards, such as J.C. Penney, Sears and Conoco Phillips. (Id. ¶ 36) HealthExtras' marketing partners sent solicitations for the HealthExtras Program with cardholders' monthly credit card statements. (Id. ¶ 39) For example, American Express sent to its cardholders a solicitation (the "American Express Solicitation") stating: "Financial Security.

---

[1] The facts set forth in this opinion are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motions to dismiss. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

You're covered with $1.5 Million if an accident leaves you permanently disabled." (Id. ¶ 40)

This solicitation went on to state:

> "The American Express Accidental Disability Plan provides you with $1.5
> million in one lump sum if you are permanently disabled as the result of an
> accident and can't return to work. For only $9.95 a month, you can help
> guarantee your financial security now and into the future. . . . With the American
> Express Accidental Disability Plan you can prevent a personal tragedy from
> becoming a financial tragedy. Enroll now, and for only $9.95 a month, you can
> rest assured that you are protected."

(Id.)

The American Express Solicitation included images of the actor Christopher

Reeve using a tracheotomy tube. HealthExtras had hired Reeve to endorse the HealthExtras

program. The solicitation warned:

> "In an instant, an accident can change your life. Now, it doesn't have to bankrupt you;
> Modern medicine can save your life – don't let it bankrupt your family; and Most people
> don't think about disability coverage until it's too late. Please don't put this off."

(Id.)  Plaintiffs allege that HealthExtras' other marketing partners sent solicitations to their

customers "that were very similar to, if not identical to, the American Express Solicitation."

(Id. ¶ 41)  HealthExtras itself also solicited consumers via telephone and direct mail.  (Id. ¶ 42)

Customers who expressed interest in the HealthExtras Program were sent letters

containing the following representations:

> • Enclosed please find the HealthExtras program description you requested.
> Because lives change in an instant, like Christopher Reeve's, HealthExtras was
> created to provide families with financial security should the unthinkable happen.
>
> • $1,000,000 [or $1,500,000] cash payment if you are permanently disabled due
> to an accident. And as a HealthExtras member, you have two tax-free options:  a
> $1,000,000 lump sum cash payment or a $250,000 cash payment plus $5,000 per
> month for 20 years.
>
> • $2,500 a year in reimbursements for coinsurance and deductibles for healthcare
> expenses when you are traveling.

(Id. ¶ 43)  Plaintiffs allege that HealthExtras and the other Defendants sent New York residents direct mail solicitations representing, inter alia, that the HealthExtras program "provides valuable protection" in the form of "a $1,000,000 [or $1,500,000] tax free cash payment if you're permanently disabled due to an accident."  (Id. ¶ 44)

Because HealthExtras is not a licensed insurer or broker, it contracted with (1) Defendants National Union, Stonebridge, Transamerica, and Federal to underwrite and issue the disability insurance coverage offered in the HealthExtras Program; and (2) Defendant Virginia Surety to underwrite and issue the Program's medical expense insurance coverage.  (Id. ¶ 59) National Union, in turn, hired Defendant AIG to process claims made under the HealthExtras Program that related to policies issued by National Union.  (Id. ¶ 58)  Defendant Alliant Services "was the insurance broker under the HealthExtras Program."  (Id. ¶ 59)

The Complaint allege that Defendants "knew that HealthExtras was not a licensed insurance broker or insurer and could not legally solicit, sell, issue or underwrite the Disability Coverage and Medical Expense Coverage under the . . . HealthExtras Program."  (Id.) Plaintiffs further allege that the Defendants "were aware of the identity and roles of HealthExtras' Marketing Partners, including . . . American Express, CitiBank, Chase, Capital One and other issuers of credit cards."  (Id. ¶ 53; see also id. ¶ 58 (alleging that "AIG was aware of all aspects of the HealthExtras Program that National Union was aware of"))

The Complaint further alleges that HealthExtras

(1) prepar[ed] all of the materials necessary to promote the HealthExtras Program,

(2) sen[t] HealthExtras Program marketing and advertising materials, which were reviewed and approved by the HealthExtras Program's insurers, brokers and Marketing Partners, to the Marketing Partners for transmission to the Marketing Partners' customers,

(3) process[ed] enrollment forms and change of address forms received from members of the HealthExtras Program,

(4) sen[t] HealthExtras Program marketing and advertising materials (including plan summaries, benefit plan descriptions and certificates of insurance), which were reviewed and approved by the insurers and brokers, to members of the HealthExtras Program,

(5) process[ed] payments for premiums and fees received from members of the HealthExtras Program,

(6) operat[ed] a call center to handle customer service calls, conforming all communications regarding benefits to scripts reviewed and approved by the insurers and Marketing Partners, and

(7) sen[t], upon request, claims forms to members of the HealthExtras Program on behalf of the insurers and any claims processors designated by the insurers.

(Id. ¶ 54)

### B.    Alleged Violations of New York Insurance Law

Plaintiffs assert that the insurance policies issued in connection with the HealthExtras Program violate New York insurance laws and regulations, rendering the policies "illegal, against public policy and void ab initio under New York law." (Id. ¶ 3)

According to Plaintiffs, the HealthExtras Program's disability and medical insurance coverage was provided under (1) "group and/or blanket accident disability insurance policies," and (2) "group and/or blanket emergency accident and sickness medical expense policies" issued by the defendant insurers. (Id. ¶ 59) "Group and blanket insurance policies differ from individual insurance policies in that a single master insurance policy is issued to an eligible entity, as opposed to the individual persons being insured. Thus, the eligible entity is the actual policyholder." (Id. ¶ 19)

Plaintiffs contend that the insurance policies issued in connection with the HealthExtras Program "were not issued to groups or entities eligible to be issued such policies under N.Y. Ins. Law § 4235 and § 4237 . . . , and 11 CRR-NY 52.70" (id. ¶ 3), and that Defendants knew that these policies had been issued to ineligible groups, such as the AIG Group Insurance Trust and HealthExtras.  (Id. ¶ 62)  Plaintiffs further allege that the consumers who purchased insurance coverage under the HealthExtras Program "were not actual members of or a part of any eligible groups or entities, but rather merely credit card holders and other individuals to whom Defendants had easy access."  (Id. ¶ 3; see also id. ¶ 106 ("The lack of any connection between Plaintiffs and the other members of the Class and AIG Insurance Trust or HealthExtras is further evidence that the [p]olicies purportedly providing them with insurance coverage were not issued to eligible entities as required by N.Y. Ins. Law §§ 4235 and 4537 . . . and 11 CRR-NY 52.70."))

Plaintiffs contend that if an "entity . . . authorized to be issued group and blanket accident and health insurance policies ever reviewed the [HealthExtras] Policies, they very likely would never have been approved, issued and coverage under them sold to Plaintiffs."  (Id. ¶ 110)  The Complaint further alleges that the "policies were not filed with and approved by the Superintendent of New York's Department of Insurance (now known as the Department of Financial Services) as required by N.Y. Ins. Law § 3201(b)(1)."  (Id. ¶ 3)  Plaintiffs claim that "[h]ad these [p]olicy forms and related individual certificates of insurance been filed, and had Defendants truthfully disclosed the proposed policyholders, it is highly likely the forms would not have been approved."  (Id. ¶ 111)

Finally, Plaintiffs allege that the policies issued in connection with the HealthExtras Program did not contain certain "standard provisions required to be included

pursuant to N.Y. Ins. Law § 3221(a) or alternative provisions that were approved . . . as being as or more favorable [to purchasers] than the standard provisions." (Id. ¶ 69; see also id. ¶ 3)  For example, insurers are required to disclose "[t]he conditions under which the insurer may decline to renew the policy." (Id. ¶ 69 (quoting N.Y. Ins. Law § 3221(a)(5)))  According to Plaintiffs, the failure to include such provisions renders the HealthExtras Program's "policies less favorable to [the] insured[s] . . . than [is] required by New York law." (Id. ¶ 112)

　　　　Plaintiffs also contend that the policies underlying the HealthExtras Program are drafted so as to "make illusory the insurance coverage supposedly provided." (Id. ¶ 113)  For example, the policies' accident disability benefits provisions provide:

1.　Loss shall mean:

    a.　total and permanent Loss of Use of both hands or both feet;

    b.　total and permanent Loss of Use of one hand and one foot;

    c.　total and permanent Loss of sight in both eyes;

    d.　total and permanent Loss of speech;

    e.　total and permanent Loss of hearing in both ears; and

2. Loss of Use means actual severance through or above a wrist or ankle or total paralysis of a limb or limbs which is determined by a competent medical authority to be permanent, complete and irreversible.

(Id. ¶ 114)

　　　　Plaintiffs claim that the likelihood of any such loss is "staggeringly remote." (Id. ¶ 115)  Although Plaintiffs "do not base their claims upon the unfair terms of the [p]olicies" (id. ¶ 113), Plaintiffs contend that the "terms of the [p]olicies illustrate how the review of group or blanket health and accident policies by both the Department of Insurance and the type of entity or group to which New York Law allows such policies to be issued . . . potentially serves to

protect individuals from payment of premiums for policies with illusory coverage that are of essentially no value." (Id. ¶ 117)

 According to the Complaint, Defendants terminated the HealthExtras Program and all associated insurance coverage after "[f]acing litigation in multiple states concerning the illegality of the purported insurance policies." (Id. ¶ 118)

## II. <u>THE COMPLAINT'S CAUSES OF ACTION</u>

 The Complaint asserts:  (1) quasi-contract claims; (2) violations of N.Y. Gen. Bus. Law § 349; (3) violations of N.Y. Gen. Bus. Law § 350; and (4) fraud, fraud in the inducement, and aiding and abetting fraud claims.  (Cmplt. (Dkt. No. 1) ¶ 4)

 With respect to their quasi-contract claims, Plaintiffs allege that "Defendants were [unjustly] enriched at Plaintiffs' . . . expense," because they sold "insurance coverage . . . that was illegal, against public policy, and void <u>ab</u> <u>initio</u>." (Id. ¶¶ 159-60)  Plaintiffs further claim that they are entitled to recover all premiums paid – even if the "coverage . . . is not void <u>ab</u> <u>initio</u>, but rather is merely voidable due to illegality" – because "(a) Plaintiffs . . . are members of the class of persons meant to be protected by the statutes and regulations violated by Defendants, and/or (b) because Defendants are 100% responsible for the violation of the New York insurance statutes and regulations, making them entirely culpable for . . . the illegality of the Policies." (Id. ¶ 162)

 The Complaint further asserts that "Defendants' marketing to, sale to, issuance of and collection of premiums or fees from Plaintiffs . . . in connection with coverage under the [p]olicies violated N.Y. Gen. Bus. L. § 349," which "makes unlawful 'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.'" (Id. ¶ 169 (quoting N.Y. Gen. Bus. L. § 349(a)))  Plaintiffs cite a number of alleged

deceptive acts and practices, including (1) the creation and distribution of marketing materials,
(2) the issuance of certificates of insurance and other documentation, (3) the listing of ineligible
entities as policyholders, and (4) the collection of insurance premiums. (Id. ¶ 171)  In
connection with these acts and practices, Defendants falsely represented that the HealthExtras
Program insurance coverage was "legal under New York law, not against public policy, [was]
issued to real, valid and eligible policyholders, [was] not void ab initio or voidable, [and]
provided real and valuable insurance coverage." (Id.)  Plaintiffs further allege that Defendants
falsely represented that they "would . . . pay claims falling under the terms of the purported
[p]olicies without first being sued." (Id.)

    The Complaint also contends that Defendants failed to make the following
necessary disclosures:

> (a) that HealthExtras created and all Defendants participated in a program
> pursuant to which unsuspecting credit card holders and others were targeted for
> what appeared to be beneficial low cost group and/or blanket accident and health
> insurance policies, (b) that HealthExtras agreed with the other Defendants that
> they would issue group and/or blanket accident and health insurance policies to
> entities ineligible to be issued group and/or blanket insurance policies under New
> York law, (c) that HealthExtras agreed with the other Defendants that they would
> issue insurance coverage under group and/or blanket accident and health
> insurance policy forms that were not filed with and approved by the
> Superintendent of New York's Department of Insurance as required by New York
> law, (d) that HealthExtras agreed with National Union, AIG, and Alliant that they
> would issue insurance coverage under group and/or blanket accident and health
> insurance policy forms that did not contain provisions required by New York law,
> (e) that the coverage under those Policies purchased by Plaintiffs and the Class
> members as part of the HealthExtras Program was illegal, against public policy,
> and either void ab initio or subject to being deemed void under New York law and
> were thus valueless, (f) that the coverage purchased by Plaintiffs and the Class
> members had not been reviewed or vetted by any eligible entity or group with a
> vested interest in insuring the quality, fairness and merits of such coverage, and
> (g) that HealthExtras and the other Defendants had agreed that claims falling
> within the terms of the purported [p]olicies would not be paid unless Class
> members filed suit.

(Id. ¶ 172)

Plaintiffs contend that these same misrepresentations and omissions constitute "false advertising" under N.Y. Gen. Bus. L. § 350 (Id. ¶¶ 179, 182), as well as fraud, fraud in the inducement, and aiding and abetting fraud under New York law.  (Id. ¶¶ 188-89)

Defendants have moved to dismiss all of Plaintiffs' claims.  (Dkt. Nos. 95, 100, 102)[2]

## DISCUSSION

### I.    STANDING

Defendants argue that "[t]his action cannot proceed because plaintiffs have not suffered a cognizable injury, and thus, lack standing to sue under Article III."  (Def. Joint Br. (Dkt. No. 103) at 9)

### A.    Legal Standard

It is well established that "'[a] plaintiff must demonstrate standing for each claim and form of relief sought.'"  Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (quoting Baur v. Veneman, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).  "'Because standing is jurisdictional under Article III of the United States Constitution, it is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court.'"  Picard v. JPMorgan Chase & Co., 460 B.R. 84, 91 (S.D.N.Y. 2011) (quoting Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 117 (2d Cir. 1991)), aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC., 721 F.3d 54 (2d Cir. 2013).

---

[2] Defendants National Union, AIG, Catamaran, Virginia Surety, Stonebridge, and Transamerica filed a joint motion to dismiss.  (Dkt. No. 102)  Federal Insurance (Dkt. No. 100) and Alliant Services (Dkt. No. 95) filed separate motions to dismiss.  On August 19, 2016, this Court entered an order dismissing the claims against Alliant with prejudice, subject to the consummation of a settlement agreement over the 120-day period following entry of the order. (Dkt. No. 136)  Accordingly, Alliant's motion to dismiss is now moot.

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).  "While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." Baur, 352 F.3d at 636-37.

> [T]he "irreducible constitutional minimum" of standing consists of three elements.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  Id., at 560-561; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560).  "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014) (quoting Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1150 n.5 (2013)).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560 n.1).  "'As a general rule,' this means 'plaintiff must have personally suffered.'" In re the Bear Stearns Companies, Inc. Sec., No. 08 MDL 1963 (RWS), 2016 WL 4098385, at *17 (S.D.N.Y. July 25, 2016) (quoting W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 107

(2d Cir. 2008)).  "Concreteness" refers to an injury that is "real, and not abstract."  Spokeo, 136

S. Ct. at 1548 (internal quotation marks omitted).

> **B.**   **Analysis**

>> **1.**   **Plaintiffs' Claim that the HealthExtras Policies Were Void *Ab Initio***

Plaintiff's primary argument for standing is that the insurance coverage they

purchased under the HealthExtras Program was based on policies that were "illegal, against

public policy, and void ab initio under New York law," because they violated New York

Insurance Law and related regulations.[3]  (Cmplt. (Dkt. No. 1) ¶¶ 1, 3; see also id. ¶¶ 111, 158,

161, 171, 172, 174, 181, 182, 184, 189, 190)  Plaintiffs contend that they "have suffered injury

by paying premiums pursuant to those void [p]olicies."  (Pltf. Br. (Dkt. No. 111) at 11)

In response, Defendants contend that Plaintiffs' void ab initio argument is

mistaken, because – under New York law – insurance policies that violate the New York

Insurance Law nonetheless remain valid and enforceable against the insurer.  (Def. Joint Br.

(Dkt. No. 103) at 16-17)

N.Y. Ins. Law § 3103(a) provides that

> any policy of insurance or contract of annuity delivered or issued for delivery in
> this state in violation of any of the provisions of this chapter shall be valid and
> binding upon the insurer issuing the same, but in all respects in which its
> provisions are in violation of the requirements or prohibitions of this chapter it
> shall be enforceable as if it conformed with such requirements or prohibitions.

N.Y. Ins. Law § 3103(a).  Accordingly, Section 3103(a) ensures that "[p]olicies that are

inconsistent with provisions of the insurance law remain valid and binding," and

obligates "insurer[s] . . . to maintain coverage, not only for the insurance it had agreed to

---

[3]  Plaintiffs do not allege that they ever filed a claim under the HealthExtras Program, much less
that Defendants denied a claim filed under the Program.  (See Cmplt. (Dkt. No. 1))

extend, but also for that which the law required it to extend." <u>In re Sept. 11th Liab. Ins.</u>

<u>Coverage Cases</u>, 333 F. Supp. 2d 111, 125 (S.D.N.Y. 2004) (citing N.Y. Ins. Law

§ 3103(a)); <u>see also</u> <u>AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.</u>, 84 F.3d

622, 624 n.1 (2d Cir. 1996) ("If . . . a provision [required by New York Insurance Law] is

not included in the policy, a court construing the policy will enforce it as if it did include

the provision." (citing N.Y. Ins. Law § 3103(a))); <u>Travelers Indem. Co. v. Northrop</u>

<u>Grumman Corp.</u>, 956 F. Supp. 2d 494, 503 n.12 (S.D.N.Y. 2013) (noting that Section

3103(a) "provides that a policy that fails to include a provision otherwise imposed by law

should be enforced as if the legally mandated provision were included"); <u>In re</u>

<u>Ambassador Grp., Inc. Litig.</u>, No. CV-85-2132 (RJD), 1991 WL 11033784, at *7

(E.D.N.Y. Feb. 27, 1991) (noting that "it would be completely contrary to New York's

established public policy to void an insurance policy issued in violation of" New York

Insurance Law and regulations; "rather, analogous to the procedure provided in Section

3103(a) of New York's Insurance Law, it would be more appropriate to treat the policy as

binding"); <u>T.P.K. Constr. Corp. v. S. Am. Ins. Co.</u>, 752 F. Supp. 105, 111 n.8 (S.D.N.Y.

1990) ("unconscionable . . . provisions do not void the Agreement[, which remains]

enforceable against the insurer under § 3103(a) of the New York Insurance Law"); <u>G.E.</u>

<u>Capital Mortg. Servs., Inc. v. Daskal</u>, 211 A.D.2d 613, 615 (2d Dept. 1995) ("to the

extent that a policy deviates from the standard policy by containing terms less favorable

to the mortgagee, 'the policy is enforceable as if it conformed with the statut[e]'"

(quoting <u>1303 Webster Ave. Realty Corp. v. Great Am. Surplus Lines Ins. Co.</u>, 63

N.Y.2d 227, 231 (1984))); citing N.Y. Ins. Law §3103(a))); <u>Metro Missions, Inc. v. US 1</u>

<u>Holdings</u>, 35 Misc.3d 1229(A), 2012 WL 1871689, at *5 n.2 (N.Y. Sup. Ct. May 24,

2012) (an insurance policy that violates the New York Insurance Law will "be deemed to provide the required coverage" pursuant to § 3103(a)); N.Y. General Counsel Opinion No. 7-7-2005 (#2), 2005 WL 3980860, at *1 (NY INS BUL July 7, 2005) ("If [a] policy is not in compliance with the Insurance Law then, pursuant to N.Y. Ins. Law § 3103(a), the policy would be enforceable as if it conformed with any requirements or prohibitions provided in the Insurance Law.").[4]

The language of Section 3103(a) is plain and unambiguous, and must be enforced in accordance with its terms. See In re Barnet, 737 F.3d 238, 246 (2d Cir. 2013) ("'Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" (quoting United States v. DiCristina, 726 F.3d 92, 96 (2d Cir. 2013))).[5] Plaintiffs have cited no case that supports their argument that the insurance policies at issue here were void ab initio, and thus unenforceable against the insurer. Indeed, both the plain language of Section 3103(a) and an unbroken line of precedent refutes that argument. Accordingly, Plaintiffs' argument that the HealthExtras policies

---

[4] Section 3103 reflects principles of New York law that have been in place for a hundred years or more. See Metro. Life Ins. Co. v. Conway, 252 N.Y. 449, 451-52 (1930) ("If approval is omitted, the policy or the rider is not invalid ipso facto, unless in conflict with the provisions exacted by the statute. It is invalid even then to the extent of the conflict, and no farther. The statute reads itself into the contract, and displaces inconsistent terms." (internal citations omitted)); Hopkins v. Conn. Gen. Life Ins. Co., 225 N.Y. 76, 82 (1918) ("No corporation issuing a policy may escape liability because of its failure to obey the law.").

[5] Plaintiffs argue that only an insured, and not an insurer, can invoke Section 3103(a). (See Pltf. Br. (Dkt. No. 111) at 15-21) The statute's language contains no such limitation, however, and it makes no sense to contend that only one side to a dispute may invoke the language of a statute. In any event, Plaintiffs' argument misses the point. The pertinence of Section 3103(a) to the standing inquiry here is that the statute destroys the premise of Plaintiffs' alleged injury. Plaintiffs contend that the HealthExtras policies are void and unenforceable because they contain terms that violate the New York Insurance Law. Section 3103(a) provides however, that such policies are valid and binding against the insurer once the premiums are paid, regardless of whether the policies contain terms that do not comply with the New York Insurance Law.

14

were void <u>ab initio</u> contradicts New York law, and provides no basis for this Court to find

that they have suffered an injury in fact, and thus have Article III standing.[6]

### 2. Plaintiffs' Claim that the HealthExtras Policies Were Voidable

Plaintiffs contend that they have "plead[ed] cognizable injuries under New York

law by pleading that the policies are voidable." (Pltf. Br. (Dkt. No. 111) at 21)  Although

Plaintiffs and Defendants discuss at length whether a rescission remedy exists here, neither side

has addressed how the availability of a rescission claim bears on the issue of whether Plaintiffs

---

[6] Many other jurisdictions follow the rule that illegal provisions in an insurance policy do not affect the enforceability of the policy against the insurer.  In these jurisdictions, courts have rejected the theory that plaintiffs suffered a cognizable injury due to the illegality of the HealthExtras policies. See, e.g., <u>Smith v. Catamaran Health Sols., LLC</u>, No. CV 3:15-2846-BHH, 2016 WL 4555325, at *6, *11 (D.S.C. Sept. 1, 2016) ("an accident or health insurance policy . . . is held 'valid' and enforceable even where it does not comply with the requirements of Chapter 71 of South Carolina's Insurance Code"; accordingly, plaintiff's "alleged source[] of injury" is "wrong as a matter of law" (citing S.C. Code § 38-71-80)); <u>Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, No. 1:14-CV-309-TWT, 2016 WL 739537, at *2 (N.D. Ga. Feb. 24, 2016) (given that "the insurance policies were valid and enforceable, even if the insurance policies violated Georgia insurance laws," "[p]laintiffs [making claims arising out of HealthExtras policies] cannot demonstrate a cognizable injury based on the theory that the insurance policies were illegal or void"); <u>Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 130 F. Supp. 3d 236, 251 (D.D.C. 2015) (because "the D.C. Code . . . contains . . . language . . . dictating that non-conforming insurance policies issued in violation of the statute 'shall be held valid but shall be construed as provided in this section,'" "to the extent that Ms. Campbell asserts injury premised on payments for a policy that was invalid and unenforceable due to violations of DC insurance laws, the argument clearly fails as a matter of law" (quoting D.C. Code § 31-4712(d)(2))); <u>Bush v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 124 F. Supp. 3d 642, 655 (E.D.N.C. 2015) ("Plaintiffs have suffered neither a concrete nor an imminent injury.  The insurance program, consisting of both the Disability Benefit and Health Benefit, is valid and enforceable under North Carolina law."); <u>Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, No. 13-6272, 2015 WL 7871165, at *4-5 (D.N.J. Dec. 4, 2015) (in New Jersey, "violations of insurance laws do not automatically render a policy void"; "[g]iven the policy's enforceability," plaintiffs raising claim concerning HealthExtras policies "lack standing because they have not alleged a concrete injury" (citing <u>Rest. Enters., Inc. v. Sussex Mut. Ins. Co.</u>, 52 N.J. 73, 77-78 (1968))); <u>Waiserman v. Nat'l Union Fire Ins. Co.</u>, No. 2:14-CV-00667-SVW (CWx), 2014 U.S. Dist. LEXIS 183642, at *5-6 (C.D. Cal. Oct. 24, 2014) ("Waiserman's policy was not illusory.  If he made a claim, [California law] would have allowed him to enforce the policy.  And if it was enforceable, it was not illusory.").

have demonstrated an "injury-in-fact" for Article III purposes.[7] See Carver, 621 F.3d at 226 ("The standing question is distinct from whether [plaintiff] has a cause of action."); see also LaPierre ex rel. Town of Yorktown v. DiBartolo, No. 12 Civ. 1996 (ER), 2013 WL 656313, at *3 (S.D.N.Y. Feb. 21, 2013) ("[E]ven if Plaintiffs would have standing to assert the derivative claims . . . in state court . . . , Plaintiffs are still required to meet the stricter federal standing requirements of Article III in order to assert such claims in this Court.").

In any event, for their rescission argument, Plaintiffs rely on the same alleged illegalities cited earlier for the proposition that the HealthExtras policies were void ab initio. (See Cmplt. (Dkt. No. 1) ¶ 162)  The Court concludes that Section 3103(a) remains an insurmountable obstacle to Plaintiff's claim that they have suffered an injury in fact providing a basis for Article III standing.[8]

### 3. Plaintiffs' Claim that Defendants' Alleged Misrepresentations and Omissions Demonstrate Injury in Fact

Plaintiffs argue that their "misrepresentation and omission claims include claims of misrepresentations and omissions not dependent upon the illegality and voidness of the [p]olicies, such that Plaintiffs plead injury even if the [p]olicies were enforceable under New York law." (Pltf. Supp. Br. (Dkt. No. 133-1) at 9)

---

[7] Indeed, Plaintiffs' entire argument rests on Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506 (S.D.N.Y. 1997), a case that does not address standing.

[8] Even if the availability of a rescission claim were relevant, there is some question as to whether Dornberger correctly determined that a rescission claim is available for a violation of the New York Insurance Law.  See Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp., No. 06 Civ. 4624 (PKL), 2008 WL 1910503, at *6 (S.D.N.Y. Apr. 30, 2008) (dismissing rescission claim based on alleged "unlawful group insurance policies" because "[a]ssuming, arguendo, that the Policies constitute unlawful group policies, the Superintendent [of the Insurance Department] is tasked with redressing such a problem").

The Complaint alleges that Defendants falsely represented that they "would pay claims falling within the terms of the purported Policies without first being sued." (Cmplt. (Dkt. No. 1) ¶¶ 171, 181, 189)  However, given that Plaintiffs do not allege that they filed a claim under the HealthExtras policies – much less that their claim was denied – "it is difficult to view [their asserted injury] as other than conjectural or hypothetical." Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 86 (2d Cir. 2014); see also Baur, 352 F.3d at 636-37 ("a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing").  In short, assuming arguendo that Defendants had agreed not to pay claims "without first being sued," Plaintiffs have not demonstrated how the alleged falsity of that representation has injured them.  "'[A]bsent any real or impending injury arising from [Defendants'] practices and nondisclosures, Plaintiffs' conclusory allegations . . . do not suffice to confer Article III standing.'" Robainas v. Metro. Life Ins. Co., No. 14 Civ. 9926 (DLC), 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) (quoting Ross v. AXA Equitable Life Ins. Co., 115 F. Supp. 3d 424, 437 (S.D.N.Y. 2015)).

The Complaint also alleges that Defendants "falsely[] represented that the purported coverage . . . was issued to real, valid and eligible policyholders, . . . [and] provided real and valuable insurance coverage." (Cmplt. (Dkt. No. 1) ¶ 171)  And Plaintiffs further contend that Defendants omitted material facts in failing to disclose that "the coverage purchased by Plaintiffs and the Class members had not been reviewed or vetted by any eligible entity or group." (Id. ¶ 172)

The Complaint pleads, however, that Plaintiffs are not alleging that the HealthExtras policies "essentially prohibit any successful claims under them or are otherwise unfair." (Id. ¶ 113)  Moreover, Plaintiffs do not allege that they would not have purchased, or

would have insisted on paying less for, the HealthExtras policies in the event that any of the

Defendants' supposed "material omissions" had been disclosed.  In sum, Plaintiffs have not

pled facts demonstrating how any of the alleged misrepresentations or omissions affected

Plaintiffs "'in a personal and individual way.'"[9]  Spokeo, 136 S. Ct. at 1548; see also Ross, 115

F. Supp. 3d at 435 ("Plaintiffs received what they bargained for . . . and do not allege, let alone

plausibly allege, that they were financially harmed by virtue of their purchases.").

        Other courts considering similar claims involving the HealthExtras Program

have reached the same result.  Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 1:14-

CV-309-TWT, 2016 WL 739537, at *2 (N.D. Ga. Feb. 24, 2016) (dismissing plaintiffs'

"contention that if they had submitted claims, the Defendants would have denied [them]" as

"mere speculation," because "[i]t is impossible to know whether the Defendants would have

denied their claims"); Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 13-6272, 2015

WL 7871165, at *5 (D.N.J. Dec. 4, 2015) ("any suggestion that [d]efendants would not honor

[p]laintiffs' claims is mere speculation, and not a concrete harm," because "[p]laintiffs have not

filed any claims"); Waiserman v. Nat'l Union Fire Ins. Co., No. 2:14-CV-00667-SVW (CWx),

2014 U.S. Dist. LEXIS 183642, at *6 (C.D. Cal. Oct. 24, 2014) ("Waiserman alleges that

because the defendants had no intention of paying out claims, they misappropriated his money.

This supposition is pure speculation.  How could Waiserman know whether defendants would

---

[9]  Plaintiffs' reliance on Storey v. Attends Healthcare Prods., Inc., No. 15-CV-13577, 2016 WL
3125210 (E.D. Mich. June 3, 2016) is misplaced.  In Storey, the court found that plaintiffs had
standing based on allegations "that they paid a premium for incontinence products that
Defendant falsely represented as being safe for long-term use."  Id. at *4.  Accordingly,
plaintiffs were harmed "regardless of whether the alleged defect manifested."  Id.  Here, in
contrast, Plaintiffs do not allege that they purchased, or paid more for, the HealthExtras
Program because of supposed misrepresentations or omissions.  See Ross, 115 F. Supp. 3d at
435 (holding that plaintiffs who did "not allege . . . that they paid higher premiums as a result of
[Defendants'] misrepresentations" lacked standing).

pay out his claim if he never submitted one?  Therefore, Waiserman cannot satisfy Article III, which requires concrete, not speculative harm.").

The Complaint's allegations concerning Defendants' misrepresentations and omissions do not provide a basis for this Court to find that Plaintiffs suffered an injury in fact, and thus have Article III standing.

### 4.     Plaintiffs' Claim that Standing is Conferred by Statutory Violation

Plaintiffs argue that "Spokeo reaffirmed the longstanding principle . . . that the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."  (Pltf. Supp. Br. (Dkt. No. 133-1) at 11 (citing Spokeo, 136 S. Ct. at 1549))  Defendants contend, however, that "Spokeo reaffirmed that a concrete injury in fact is among the irreducible constitutional minimum requirements of Article III standing."  (Def. Supp. Br. (Dkt. No. 137) at 6)

In Spokeo, Inc. v. Robins, Robins alleged that Spokeo's search engine – which compiled data from "a wide spectrum of databases" – contained incorrect information about him, including that he was "married, . . . in his 50's, [employed], . . . relatively affluent, and [held] a graduate degree."  Spokeo, 136 S. Ct. at 1546.  Robins claimed that Spokeo "qualif[ied] as a 'consumer reporting agency' under the [Fair Credit Reporting Act ("FCRA")]," and that Spokeo had failed to comply with FCRA statutory requirements for such agencies, such as "'follow[ing] reasonable procedures to assure maximum possible accuracy of' consumer reports."  Id. at 1545-46 (quoting 15 U.S.C § 1681e(b)).  The district court granted Spokeo's motion to dismiss, finding "that Robins had not 'properly pled' an injury in fact, as required by Article III."  Id. at 1546.  The Ninth Circuit reversed, noting "that 'the violation of a statutory

right is usually a sufficient injury in fact to confer standing.'" Id. (quoting Robins v. Spokeo, Inc., 742 F.3d 409, 412 (9th Cir. 2014)).

The Supreme Court acknowledged that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." Id. "[A] plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. (emphasis in original). The Court cited two cases to illustrate the point: Federal Election Comm'n v. Akins, 524 U.S. 11 (1998), and Public Citizen v. Department of Justice, 491 U.S. 440 (1989). Id. In both Akins and Public Citizen, the Court "held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." Akins, 524 U.S. at 21 (citing Public Citizen, 491 U.S. at 449 (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue")).

In Spokeo, however, the Court explained that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Spokeo, 136 S. Ct. at 1549. The Court went on to rule that the Ninth Circuit's standing analysis had "overlooked" the requirement of concrete injury:

> On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm.

Spokeo, 136 S. Ct. at 1550.

Here, Plaintiffs contend that their claims fall within the Akins and Public Citizen line of cases, because they "allege . . . violation . . . of their rights under both New York insurance statutes and regulations . . . and New York's consumer protection statutes." (Pltf. Supp. Br. (Dkt. No. 133-1) at 11)  This Court disagrees.

Unlike in Akins, where plaintiffs had sued under the Federal Election Campaign Act ("FECA") and "Congress ha[d] specifically provided in FECA that '[a]ny person who believes a violation of this Act . . . has occurred, may file a complaint with the Commission'" Akins, 524 U.S. at 19 (quoting 2 U.S.C. § 437g(a)(1) (current version at 52 U.S.C. § 30109(a)(1))) – Plaintiffs here have not brought claims under the New York Insurance Law, and no private right of action exists under the Insurance Law concerning the matters about which Plaintiffs complain.  See Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp., No. 06 Civ. 4624 (PKL), 2008 WL 1910503, at *6 (S.D.N.Y. Apr. 30, 2008) ("Assuming, arguendo, that the [p]olicies constitute unlawful group policies, the Superintendent is tasked with redressing such a problem."); Harrison v. Metro. Life Ins. Co., 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006) ("implying a private right of action" under the New York Insurance Law "would not be consistent with the legislative scheme, which establishes the procedures for enforcement of various provisions of the Insurance Law by the Superintendent of Insurance"); Sparkes v. Morrison & Foerster Long-Term Disability Ins. Plan, 129 F. Supp. 2d 182, 188 (N.D.N.Y. 2001) ("Where the legislature intended that a particular provision of the Insurance Law be enforced through a private right of action, it expressly so provided in the terms of the statute.").

Plaintiffs' allegations regarding Defendants' violations of the Insurance Law are made merely for the purpose of demonstrating that the insurance coverage under the HealthExtras Program was void ab initio.  (See Cmplt. (Dkt. No. 1) ¶ 3 (detailing Defendants'

violations of the New York Insurance Law and then alleging that "the purported policies and the individual coverage under them are illegal, against public policy and void <u>ab initio</u> under New York law")) Plaintiffs have not brought a claim under the New York Insurance Law, and they are not attempting to vindicate a statutory right of the sort at issue in <u>Akins</u> and <u>Public Citizen</u>.

 Plaintiffs' claims under New York's consumer protection statutes – N.Y. Gen. Bus. L. §§ 349 and 350 – likewise do not fall within the <u>Akins</u> and <u>Public Citizen</u> line of cases. Under both statutes, plaintiffs must allege that they "suffered injury." <u>Stutman v. Chem. Bank</u>, 95 N.Y.2d 24, 29 (2000); <u>see also</u> Denenberg <u>v. Rosen</u>, 71 A.D.3d 187, 194 (1st Dept. 2010) ("'The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to Section 349.'" (quoting <u>Goshen v. Mut. Life Ins. Co. of New York</u>, 98 N.Y.2d 314, 324 (2002))). Accordingly, these New York consumer protection statutes are not comparable to the statutes at issue in <u>Akins</u> and <u>Public Citizen</u>, "where Congress clearly intended to create a right to bring suit regardless of the existence or non-existence of actual harm." <u>Dolan v. Select Portfolio Servicing</u>, No. 03-CV-3285 (PKC) (AKT), 2016 WL 4099109, at *7 (E.D.N.Y. Aug. 2, 2016).

 This case is also distinguishable from <u>Akins</u> and <u>Public Citizen</u> in that the Complaint alleges only state law violations. "Although states may create a statutory cause of action where none exists in federal law, states may not bypass constitutional or prudential standing requirements." <u>Robainas</u>, 2015 WL 5918200, at *6; <u>see also</u> <u>Ross</u>, 115 F. Supp. 3d at 434-35 ("state law . . . cannot 'confer injury in the Art. III sense where none would otherwise exist'" (quoting <u>Mangini v. R.J. Reynolds Tobacco Co.</u>, 793 F. Supp. 925, 929 (N.D. Cal. 1992))). As Judge Furman noted recently in dismissing a suit based on violations of the New York Insurance Law,

limitations on standing "serve[ ] vital interests going to the role of the Judiciary in our system of separated powers," Hollingsworth v. Perry, 133 S. Ct. 2652, 2667 (2013), and are "founded in concern about the proper – and properly limited – role of the courts in a democratic society," Allen v. Wright, 468 U.S. 737, 750 (1984) (internal quotation marks omitted).  It follows that "[s]tates cannot alter that role simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse." Hollingsworth, 133 S. Ct. at 2667.

Ross, 115 F. Supp. 3d at 434.

Plaintiffs' claims under New York's consumer protection statutes do not provide a basis for this Court to find that Plaintiffs have Article III standing.

*     *     *     *

Because the Complaint does not adequately plead an injury in fact, Defendants' motions to dismiss (Dkt. Nos. 100, 102) will be granted.[10]

### CONCLUSION

For the reasons stated above, Defendant Alliant Services' motion to dismiss (Dkt. No. 95) is denied as moot, and the remaining Defendants' motions to dismiss are granted. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 95, 100, 102).

Dated: New York, New York
       September 18, 2016

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[10]  Given the Court's ruling as to standing, it will not address Defendants' remaining arguments for dismissal.  See Matter of Appointment of Indep. Counsel, 766 F.2d 70, 75 (2d Cir. 1985) ("[W]hen a plaintiff lacks standing the court must dismiss the case on that ground, and it is unnecessary to intimate a view as to the merits of the claim." (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 n.6 (1973))).

23